AUGUSTUS DAY, *Complainant*, vs. CYRUS A. KELLOGG, GEORGE W. RICHARDSON AND ROBERT HOSIE, *Defendants.*

*The State Courts have no jurisdiction to try and determine cases involving the validity of Patent Rights.*

*Wayne Circuit, In Chancery*, May, 1870.

The bill in this case sets forth the following facts :

That in May, 1868, defendants Kellogg and Richardson were engaged, in the city of Detroit, in selling a certain patented invention, known as "Staples' Automatic Clothes Washer and Boiler," claiming to be the owners of the same for the State of Michigan; that they applied to complainant to purchase the right representing the invention to be a new and valuable one; that relying on these statements, complainants did purchase the State right—excepting certain counties—and gave to defendants his notes secured by mortgage in payment; that the only consideration for these notes and mortgages was the patent right in question; that this patent was an infringement and void; that the notes are in the hands of the defendant, Hosie, a banker, for collection, and praying that the defendants may be enjoined from collecting or disposing of the notes and mortgages in question.

The answer of the defendants, Kellogg and Richardson, admits that they were owners of the patent right, and the sale to complainant, but denies that any representation or warranty was made by them as to the validity of the patent. It admits the giving of the notes etc., but states as a part of their consideration, certain boilers and apparatus, office furniture, etc., sold to complainant, together with the patent right. It denies the invalidity of the patent or that it is an infringement, but asserts that it is a valid and valuable patent.

The cause was heard upon bill, answer and proof, but the question of jurisdiction was alone discussed by counsel.

*J. J. Speed*, Complainant's Solicitor, *D. C. Holbrook* of Counsel.

*E. W. Meddaugh*, Solicitor for Defendants.

*By the Court,* PATCHIN J.—This is a bill in Chancery, filed for the purpose of setting aside and having delivered up a certain mortgage and notes claimed to have been given by complainant to the defendants, Kellogg and Richardson, in payment for a certain patent right, on the ground that the patent was invalid and void.

The act of Congress of July 4, 1836, provides as follows:

" That all actions, suits, controversies and cases arising under any law of the United States, granting or confirming to inventors the exclusive right to their inventions or discoveries shall be originally cognizable, as well in equity as at law by the Circuit Court of the United States or any district court having the powers and jurisdiction of a circuit court.

That the effect of this act is to confer upon the Federal courts exclusive original jurisdiction of suits in equity involving the validity of patents has not, I believe, been questioned by any well considered case arising since its passage. *Gibson vs. Woodworth,* 8 *Paige* 132 ; *Dudley vs. Mayhew,* 3 *Comst.,* 9.

It is, however, urged on the part of the complainants, that the State courts still assume jurisdiction to pass upon the validity of a patent right whenever it arises in a case *collaterally,* and to this a large number of cases were cited at the hearing. In my examination of this question, I have carefully studied all of these cases and many others. But, with the exception of one, which I shall hereafter notice, I have been unable to find any in which a State court has entertained jurisdiction of a suit brought for the purpose of having a patent right declared void, as a basis for affirmative relief. In nearly every case the question has arisen collaterally as a matter of defense, and even then has been generally passed upon without objection or discussion. I apprehend that this fact may, in a great measure, account for the large number of authorities sustaining jurisdiction of State courts in cases in which the question of the validity of a patent arises by way of defense. Without considering the weight of authorities upon this subject, I am at a loss to see how a well considered adjudication, in view of the statute above referred to, could possibly hold that a State court had jurisdiction to try and determine any case involving the validity of a patent

right, either directly or otherwise. It seems to me entirely clear that no careful and intelligent State court would attempt or desire to assume jurisdiction of a question which can only arise under and by virtue of a United States law, especially when that law itself, in terms so explicit, confers exclusive jurisdiction on another tribunal. In one of the more recent cases it was held that the courts had no jurisdiction to inquire into the validity of a patent right, even when it arises as a matter of defense—40 *Maine*, 430. The case before referred to as sustaining the present bill in its prayer by affirmatory relief is in 11 *Ohio*, 162. As an authority, this case is entitled to but very little weight, for neither the counsel nor the court make any reference to the jurisdictional question, and it does not seem to have occurred to them that it was involved in the case. Clearly, in the consideration of the points involved, the substance of the case was overlooked, and the shadow embraced; whereas, had it, received that careful and full consideration which all courts ought to give questions of this nature, the objections to entertaining jurisdiction undoubtedly would have appeared so substantial and clear as to have led the court to an entirely different conclusion.

It was asserted by counsel at the hearing, but without any extended argument, that Congress does not possess constituional power to deprive the State courts of jurisdiction of such questions, and hence that the act of 1836 is void.

I have no question as to the validity of the act. It seems to me entirely clear that Congress not only possessed authority but it is their absolute duty, in some manner, to exercise it so as to prevent the many wrongs that would be sure to flow from the assumption of jurisdiction by the State courts, of questions of this nature. The decree of the State court against the validity of a patent right, though pronounced by the court of last resort, and binding upon the parties to the suit, would not *settle* the question; for, notwithstanding such judgment, the Federal courts might declare the same patent to be valid, and thus the anomaly be presented of a party deprived of his property by erroneous judgment of a court of last resort in reference to the character or status of a thing which settles nothing beyond

the rights of the immediate parties to the suit. Thus, in the case at bar, should the complainant succeed and the patent be declared void and the mortgage and note be delivered up, it would be entirely competent for the Federal courts to pronounce the same patent valid, and we should have the singular spectacle of a patent possessing those peculiar qualities so as to be void as to one suitor and valid as to another. On the other hand, a decree of the Supreme Court of the United States as to the validity of a patent settles the question with everybody. It is the settled policy of the law that every one is entitled to his day in court, but it does not therefore follow that because he is subject to the laws of the State he must be heard in the State courts; for he is also subject to the laws of the United States, and may, with equal propriety, be heard in the Federal courts, especially, in matters arising under the laws of the United States.

The people of the States are like the people of the United States. Their interests are identical. Withdraw the one and the other has vanished.

It is quite immaterial in what particular forum the litigant seeks to redress his real or imaginary wrongs, so that one of competent jurisdiction is open to him. His rights will be equally protected in either.

I have no sympathy with that party spirit of jealousy, seen frequently in legislative bodies, and sometimes even in the judiciary, which is blind to every consideration, either of logic or sense, that may, by any possibility, make against its own preconceived political theories. It is the highest duty of the judiciary to rise above this, as it is its glory that thus far, in the history of our country it has generally been enabled to do so. That politicians, who often seem to imagine their own individual interests paramount to those of the public, should sometimes be found antagonistic to the best interests of society may not seem so strange, but when the judiciary so far forgets its duties as to be influenced in the slightest degree by any expectation of personal or political advantage, or, indeed by any other than a desire to fearlessly and impartially administer justice for the

sake of justice itself, the last anchor to our institutions will have been loosened, and we may well feel alarmed for their safety.

Being clear in the conviction that this Court has no jurisdiction in this case, I must direct the register to enter a decree dismissing the bill of complaint with costs.